IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| TON SERVICES INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>QWEST CORPORATION, a Delaware corporation, and UNIDENTIFIED CORPORATIONS I-X,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER REFERRING ISSUES TO THE FCC<br><br><br><br>Case No. 1:04-CV-35 TS |

      This matter is before the Court on remand from the Tenth Circuit Court of Appeals. The Court must determine whether to invoke the doctrine of primary jurisdiction and refer this matter to the Federal Communications Commission ("FCC"). In addition, both parties have filed substantive motions. On April 22, 2008, the Court heard oral argument on the issue of referral and the parties' motions. Having considered the memoranda filed by the parties, oral argument of counsel, and being otherwise fully informed, the Court will invoke the doctrine of primary jurisdiction and refer certain issues to the FCC. The Court will stay this matter until a determination on these issues is made by the FCC and will administratively close this case. As a result, the Court need not reach the parties' motions.

1

I.  BACKGROUND

As noted, this matter is before the Court on remand from the Tenth Circuit.  Previously, the Court dismissed Plaintiff's Amended Complaint, finding that the filed rate doctrine barred the relief Plaintiff sought.  Additionally, the Court invoked the doctrine of primary jurisdiction.  In doing so, the Court dismissed Plaintiff's Amended Complaint without prejudice to allow it to pursue administrative remedies.  An appeal followed.

On appeal, the Tenth Circuit found that the filed rate doctrine did not apply and vacated the Court's dismissal of Plaintiff's Amended Complaint.[1]  The Tenth Circuit went on to find that the Court properly invoked the doctrine of primary jurisdiction.[2]  However, the Court erred by dismissing the case without prejudice, rather than staying it.[3]  The Tenth Circuit provided additional guidance as to the issues the Court should consider referring to the FCC.[4]

The parties have briefed the issue of referral to the FCC.  In addition to the parties' positions on the issue of remand, both parties have filed substantive motions.  Defendant has filed a Motion to Dismiss.  Plaintiff, in response to the Motion to Dismiss, seeks leave to file a Second Amended Complaint.

---

[1] *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007).

[2] *Id*. at 1239.

[3] *Id*. at 1240.

[4] *Id*. at 1240–42.

## II.  PRIMARY JURISDICTION

"Even where a court has subject matter jurisdiction over a claim, courts have discretion to refer an issue or issues to an administrative agency."[5]  "The doctrine of primary jurisdiction is 'specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.'"[6]  In the Tenth Circuit, to invoke the doctrine of primary jurisdiction, the Court is required "'to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency.'"[7]  "Additionally, when the regulatory agency has action pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate."[8]

The Tenth Circuit found that this Court "properly invoked the doctrine of primary jurisdiction, but did so without evaluation of the issues to be referred, the purposes to be served by referral, or a clear statement that the FCC is the appropriate agency to consider the referred issues."[9]  The Tenth Circuit further noted that the Court "erred by misidentifying the issues to be referred and failing to clearly direct its primary jurisdiction referral to the FCC."[10]

---

[5]*Id*. at 1238.

[6]*Id*. (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)).

[7]*Id*. at 1239 (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005)).

[8]*Id*.

[9]*Id*.

[10]*Id*.

The Tenth Circuit went on to identify three issues meriting consideration by this Court for primary jurisdiction referral to the FCC: "(1) whether a violation of FCC orders gives rise to statutory liability; (2) whether the PAL [Public Access Line] rates Qwest charged during the period of its procedural noncompliance with FCC orders were substantively compliant with the NST [New Services Test]; and (3) if not, how damages should be calculated."[11]  The Tenth Circuit discussed each of these issues in turn.

With regard to the first issue, the Tenth Circuit stated:

> In light of the Supreme Court's guidance in *Global Crossing Telecommunications* that not "every violation of FCC regulations" constitutes a statutory violation . . . and that courts should apply *Chevron* deference to the Commission's views on whether a violation of its regulations gives rise to statutory liability . . . the district court should consider whether the FCC is in the best position to determine in the first instance if its regulatory orders contemplate that failures to comply procedurally with its regulations amount to violations of §§ 201(b), 276(a), or 416(c).  A desire for uniformity in interpretation of the comprehensive regulatory scheme suggests this issue is appropriate for agency resolution.[12]

Plaintiff argues that the Court can determine whether Defendant's procedural noncompliance constitutes a violation of §§ 201(b), 276(a), or 416(c).  Plaintiff argues that "it is virtually certain that the FCC would reach the same conclusion in this case that it reached when it held in *Global Crossing* that failure to pay per-call compensation violated § 201(b)."[13]  Defendant also argues that the Court need not refer this issue to the FCC, but for a very different reason.  Defendant states that referral is unnecessary because the FCC is already deciding this

---

[11]*Id*.

[12]*Id*. at 1242.

[13]Docket No. 86, at 4.

issue.[14]  Defendant further argues that Plaintiff's conclusion that the Court can determine this issue is incorrect.  Defendant argues that Congress left this issue for the FCC to decide.

The Court finds that the issue of whether Defendant's procedural noncompliance amounts to a violation of §§ 201(b), 276(a), or 416(c) is appropriate for referral to the FCC.  This determination is based on the desire for uniformity in interpretation of the comprehensive regulatory scheme, as recognized by the Tenth Circuit.[15]  Further, as noted by Defendant, the FCC is already considering this issue.  This buttresses the decision to refer this matter.  As stated by the Tenth Circuit, "when the regulatory agency has action pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate."[16]

As to the second issue, the Tenth Circuit stated:

> The district court should also consider whether agency expertise is necessary to evaluate Qwest's substantive compliance with the NST.  If Qwest's procedural noncompliance gives rise to statutory liability, a substantive-compliance analysis will be necessary in order to determine whether TON may seek refunds or other damages in federal court for Qwest's violation of FCC orders.  Even if a procedural violation of FCC orders does not give rise to statutory liability, a substantive evaluation of Qwest's NST compliance would nevertheless be necessary to assist the court in determining whether Qwest directly violated § 276(a)'s anti-subsidization and anti-discrimination commands.  Because of the complexities of tariffing and the number of states in which Qwest was required to file NST-compliant tariffs, the district court should consider whether agency expertise is necessary for the resolution of this issue.  If so, the FCC, perhaps with the assistance from state regulators using the conference procedure set forth in 47 U.S.C. § 410(b), could determine whether Qwest's April 1997 to April 2002 tariff rates in each jurisdiction were cost-based and consistent with all aspects of §

---

[14]Docket No. 92, at iii.

[15]*TON Servs., Inc.*, 493 F.3d at 1242.

[16]*Id*. at 1239.

276(a), including § 276's anti-discrimination and anti-subsidization requirements.[17]

Plaintiff argues that the Court can determine whether Qwest's pre-2002 PAL rates did not comply with the NST.  Plaintiff asserts that "in light of the fact that Qwest's PAL rates dropped so significantly in 2002 (in some states over 50%), it is a virtual certainty that the previous rates"[18] did not comply with the NST.  Defendant argues that the issue of whether its pre-2002 PAL rates complied with the NST is an issue to be determined by state agencies.  Thus, any referral should be to state agencies, not the FCC.

A determination of whether Qwest's pre-2002 PAL rates were in compliance with the NST is a question that should be referred to the FCC who, possibly in conjunction with state agencies, is in the best position to make this determination.  This is a complex determination that is not within the conventional experience of judges.  Further, that determination requires the uniformity and consistency in the regulation of the business entrusted to the FCC.  Thus, referral of this issue to the FCC is appropriate.  Referral to state agencies, as argued by Defendant, is not appropriate under the Tenth Circuit's ruling.

Finally, the Tenth Circuit stated:

> If Qwest's rates did not comply substantively with the requirements of the NST by failing to be cost-based, containing subsidies, or discriminating in favor of Qwest, TON is entitled to seek damages under § 206 for Qwest's violations of § 276(a).  The FCC, again perhaps with the assistance of state agencies, is likely to be in the best position to calculate the difference between Qwest's pre-April 2002 noncompliant rates and rates that would have been NST compliant.  This

---

[17] *Id.* at 1242.

[18] Docket No. 86, at 4.

calculation would assist the court in considering TON's claim for damages and, if appropriate, awarding such damages.[19]

Plaintiff argues that a determination of damages will be a mere matter of subtraction which can be conducted by the Court. Defendant argues that any calculation of damages is impossible without a determination of whether Qwest's pre-2002 PAL rates were NST compliant. Defendant argues that the damages issue must also be referred to the state agencies. Defendant also argues that the scope of the *Waiver Order*[20] is ambiguous. The Ninth Circuit, in an analogous case, found that the scope of the *Waiver Order* was an issue that should be referred to the FCC under the doctrine of primary jurisdiction.[21]

Any determination of damages in this case is contingent upon resolution of the issue of whether Qwest's pre-2002 rates complied with the NST. If Defendant's rates did not comply with the NST, the FCC is likely to be in the best position to calculate the difference between Qwest's pre-April 2002 noncompliant rates and rates that would have been NST compliant. A determination of this issue would be helpful to the Court in determining any damages that may be awarded. Further, the FCC is in the best position, and is currently considering, the scope of the *Waiver Order*, which would certainly affect any possible damage award. Thus, referral of this issue is appropriate. This determination is based on the desire for uniformity in interpretation of the comprehensive regulatory scheme. Further, the FCC is already considering the scope of the *Waiver Order* which will impact a damages calculation.

---

[19]*TON Servs., Inc.*, 493 F.3d at 1242.

[20]*In re Implementation of the Pay Tel. Reclassification and Comp. Provisions of the Telecomm. Act of 1996*, 12 FCC Rcd. 21370 (1997).

[21]*Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1090 (9th Cir. 2006).

From the above, referral to the FCC is appropriate on the following issues:

(1) Whether Defendant's procedural noncompliance with FCC regulations and orders give rise to statutory liability under 47 U.S.C. §§ 201(b), 276(a), or 416(c);

(2) Whether Qwest's April 1997 to April 2002 tariff rates in each jurisdiction were cost-based and consistent with all aspects of 47 U.S.C. § 276(a), including Section 276's anti-discrimination and anti-subsidization requirements; and

(3) If Qwest's rates did not comply substantively with the requirements of the NST by failing to be cost-based, containing subsidies, or discriminating in favor of Qwest, what is the difference between Qwest's pre-April 2002 noncompliant rates and rates that would have been NST compliant.

Because the Court finds that referral of these issues is appropriate, the Court need not reach the parties' substantive motions.

### III.  CONCLUSION

It is therefore

ORDERED that the issues set forth above shall referred to the FCC and this case be stayed.  It is further

ORDERED that Defendant's Motion to Dismiss (Docket No. 84) and Plaintiff's Motion to Amend (Docket No. 97) are DENIED WITHOUT PREJUDICE.

The Clerk of the Court is directed to administratively close this case.  The parties are directed to contact the Court within ten (10) days of any action taken by the FCC in this matter.

DATED   April 24, 2008.

                                        BY THE COURT:

                                        _____
                                        TED STEWART
                                        United States District Judge